Exhibit J



**Portfolio Media. Inc.** | 860 Broadway, 6th Floor | New York, NY 10003 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Russia's Commitment To Int'l Law Will Be Tested By Yukos

Law360, New York (August 25, 2014, 10:52 AM ET) -- In a historic arbitration award rendered on July 18, 2014, an arbitral tribunal sitting in The Hague under the auspices of the Permanent Court of Arbitration unanimously held that the Russian Federation breached its international obligations under the Energy Charter Treaty by destroying Yukos Oil Company and appropriating its assets. The tribunal ordered the Russian Federation to pay damages in excess of $50 billion to the majority shareholders of Yukos. The tribunal also ordered the Russian Federation to reimburse to the claimants $60 million in legal fees, which represents 75 percent of the fees incurred in these proceedings, and approximately $5.56 million in arbitration costs. This is by far the largest award ever rendered by an arbitral tribunal.



Yas Banifatemi

## Background

In 2003, Yukos was the largest oil company in Russia producing over 1 million barrels of oil per day. It was on the verge of merging with Sibneft and becoming the fourth largest oil company in the world. That same year, however, the Russian Federation launched coordinated attacks on Yukos, starting with the arrest of its CEO Mikhail Khodorkovsky on Oct. 25, 2003. The Russian Federation then proceeded to destroy Yukos through the enforcement of fabricated tax claims and by intimidating and harassing its employees and officials as well as other individuals related to the company, including Yukos' auditor PricewaterhouseCoopers LLP. The expropriation of Yukos' assets was achieved gradually, starting in December 2004, with the rigged auction of Yukos' largest production unit Yuganskneftegaz ("YNG") and ending with the company's final liquidation in November 2007.

## Arbitral Proceedings

In 2005, shortly after the sale of YNG, Hulley Enterprises Limited, Yukos Universal Limited (two subsidiaries of GML Limited), and Veteran Petroleum Limited — the pension fund established in 2001 for the benefit of former Yukos employees — which collectively owned over 70 percent of the shares in Yukos, initiated three arbitral proceedings against the Russian Federation under ECT. In the arbitrations, the majority shareholders of Yukos complained of arbitrary, unfair and discriminatory treatment, and an unlawful expropriation of their investments by the Russian Federation.

The tribunal was chaired by Yves Fortier, formerly Canada's Representative on the U.N.

Security Council and President of the Security Council. The Russian Federation appointed Judge Stephen Schwebel, former President of the International Court of Justice, and the claimants appointed Dr. Charles Poncet, partner at CMS von Erlach Poncet Ltd. in Geneva.

The proceedings were, in the tribunal's words, "mammoth arbitrations." They involved a 10-day hearing on jurisdiction and admissibility in 2008, and a 21-day hearing on the merits in 2012, attended by over 50 party representatives as well as fact witnesses and experts. The parties' written submissions exceeded 6,500 pages and the transcript of the hearings is over 3,300 pages long. Over 11,000 exhibits were filed with the tribunal.

On Nov. 30, 2009, the arbitral tribunal issued its interim awards on jurisdiction and admissibility, holding that the Russian Federation was bound by the ECT by virtue of the treaty's provisional application by the Russian Federation, even though the treaty had not been ratified by the Russian Duma, and that the claimants were protected investors under the ECT.

In its July 18, 2014, final awards, the tribunal held that the Russian Federation's actions amounted to an "unlawful expropriation," in breach of the Russian Federation's obligations under Article 13(1) of the ECT, and that the claimants were entitled to "reparation for the injury they suffered as a result of those of [the Russian Federation's] measures that the tribunal has found to be internationally wrongful".

## Findings of the Arbitral Tribunal

The parties to the arbitral proceedings presented divergent explanations as to why Yukos ceased to exist. On the one hand, the claimants alleged that the Russian authorities fabricated tax claims against Yukos exceeding $24 billion, pursued a campaign of intimidation and harassment against the company and numerous individuals related to it, and auctioned off its assets piece by piece (starting with YNG, Yukos' crown jewel), ending with Yukos being stricken off the Russian companies' register in November 2007. On the other hand, the Russian Federation claimed that it was collecting back taxes and pursuing legitimate tax enforcement measures to bring Yukos into compliance.

Rejecting the Russian Federation's argument, the arbitral tribunal found that the "primary objective of the Russian Federation was not to collect taxes but rather to bankrupt Yukos and appropriate its assets." It found that this was evident at every step in the destruction of Yukos.

First, the tribunal found that, while Yukos may have been "vulnerable" in respect of certain elements of its tax optimization structure, there was no precedent in Russian tax law and practice for the manner in which Yukos was found liable to pay back taxes. The tribunal was particularly critical about the manner in which value-added tax liability was imposed on Yukos, especially because it was undisputed that the oil in question was exported and no VAT should have been due. The tribunal considered that the repeat-offender and willful-offender fines imposed on Yukos were also improper.

Second, the tribunal considered that the clear record of intimidation and harassment of Yukos' senior executives, midlevel employees, in-house counsel and external lawyers by the Russian authorities supported "claimants' central submission that the Russian authorities were conducting a 'ruthless campaign to destroy Yukos, appropriate its assets and eliminate Khodorkovsky as a political opponent.'"

Third, according to the tribunal, the Russian Federation's complete failure to engage with any of Yukos' settlement proposals further contradicted its claim that the collection of taxes was its primary concern in dealing with Yukos.

Fourth, the tribunal found that the auction of YNG — which resulted in state-owned

Rosneft acquiring YNG at a knockdown price — was "rigged" and amounted to "a devious and calculated expropriation" by the Russian Federation.

Fifth, in the view of the tribunal, Yukos was the object of a series of politically motivated attacks by the Russian authorities that was also demonstrated by the pressure they exerted against PwC to withdraw its audits of Yukos' financial statements and give evidence against Khodorkovsky and his business associate, Platon Lebedev, at their second trial in Russia.

Sixth, the tribunal found that the bankruptcy proceedings under which the remainder of Yukos' assets were acquired by state-owned companies Rosneft and Gazprom were not part of a process for the collection of taxes but were rather "the final act of destruction of the company by the Russian Federation."

Finally, having reviewed the role of Rosneft in the destruction of Yukos, and relying on certain statements by President Vladimir Putin, the tribunal found that Rosneft's conduct in the context of the YNG auction was attributable to the Russian government. Likewise, in relation to Rosneft's actions in the bankruptcy proceedings, the tribunal considered that "it may be reasonably held that the highest officers of Rosneft who at the same time served as officials of the Russian Federation in close association with President Putin acted in implementation of the policy of the Russian Federation."

In light of these findings, the tribunal concluded that the Russian Federation's actions amounted to an unlawful expropriation of the claimants' investments in Yukos, in breach of Article 13(1) of the ECT. In assessing the damages due to the claimants, the tribunal valued the claimants' shareholding in Yukos at about $66.7 billion. However, it considered that in two instances (Yukos' conduct in certain low-tax regions in Russia and its utilization of the Cyprus-Russia Double Taxation Agreement) the claimants had contributed to the prejudice they suffered, and, on that basis, it reduced the amount of damages by 25 percent — from $66.7 billion to $50 billion.

## Important Legal Determinations Made by the Arbitral Tribunal

In its interim awards on jurisdiction and admissibility, the arbitral tribunal dismissed all of the Russian Federation's preliminary objections on jurisdiction and admissibility, except for two which the tribunal deferred to the merits phase: (1) the respondent's allegations that the claimants did not come to the tribunal with "clean hands" and that (2) the claims were precluded by the ECT's taxation exception, Article 21. In its final awards, the arbitral tribunal rejected these remaining objections, both of which involved issues that had not been analyzed extensively in previous arbitral jurisprudence.

Regarding the "clean hands" objection, the arbitral tribunal first ruled that an investor who obtained an investment solely by acting in bad faith or in breach of the host state's laws would not be able to benefit from the ECT. At the same time, an investor who has breached the host state's law in the course of the performance of its investment would not be denied the right to invoke the ECT. The tribunal also considered that a "clean hands" doctrine did not constitute a general principle of international law. The tribunal then rejected the respondent's allegations concerning the manner in which the claimants acquired their investments.

With respect to the Article 21 objection, the arbitral tribunal held that the Russian Federation's arguments were not availing for two reasons. First, the tribunal considered that any measures excluded by the taxation exception in Article 21(1) of the ECT would be brought back within the tribunal's jurisdiction through Article 21(5) of the ECT (which, in turn, provides that the ECT's provisions on expropriation apply to taxes). Second, the tribunal found that Article 21 applies solely to bona fide taxation actions. It does not apply to actions taken only under the guise of taxation and which in reality aim to achieve an

entirely unrelated purpose, "such as the destruction of a company and the elimination of a political opponent." The tribunal concluded that Article 21(1) of the ECT did not apply since the Russian Federation's tax assessments levied against Yukos were essentially aimed at paralyzing Yukos rather than collecting taxes.

## Next Steps

The final awards rendered by the arbitral tribunal on July 18 are now immediately payable and enforceable. The tribunal provided the Russian Federation with a six-month grace period during which interest will not accrue on the sums awarded to the claimants. After the expiration of this period, as of Jan. 15, 2015, interest will be determined as the yield on 10-year U.S. treasury bonds, compounded annually.

The Russian Federation cannot appeal the awards. It may only seek to challenge — to a limited extent — the awards before the courts in the seat of the arbitrations, namely, The Hague and the Netherlands. Under Dutch law, the grounds for such challenges are restricted, such as whether the arbitral tribunal respected the parties' due process rights or whether the tribunal had jurisdiction over the dispute, and the threshold is high. There is no review of arbitral tribunals' decisions on the merits. In the present case, the arbitral tribunal — which was of the highest possible caliber — examined all issues, including the parties' arguments on jurisdiction, comprehensively and meticulously. It provided both parties every opportunity to state their case, fully respecting their right to be heard. The tribunal decided all issues unanimously, including when it found the Russian Federation to be bound by the ECT and to have expropriated the claimants' investments in breach of Article 13(1) of the ECT.

The Russian Federation may decide to voluntarily comply with the final awards. By doing so it will demonstrate a commitment to honoring its international obligations and the rule of law.

If the Russian Federation does not voluntarily comply with the awards, the claimants will be able to pursue enforcement in any of the 150 states that are bound by the 1958 New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Pursuant to the New York Convention, these 150 states are obligated to enforce the awards rendered against the Russian Federation, without reviewing the tribunal's findings on the merits.

For the purposes of enforcement, the assets that can be attached include Russian Federation assets used for commercial purposes, as well as assets of instrumentalities of the Russian Federation, provided it can be established that such entities are the state's alter ego.

—By Emmanuel Gaillard and Yas Banifatemi, Shearman & Sterling LLP

*Emmanuel Gaillard is a partner in Shearman & Sterling's Paris office, where he is head of the firm's international arbitration practice.*

*Yas Banifatemi is a partner in Shearman & Sterling's Paris office, where she leads the firm's public international law practice.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of the firm, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

**Disclosure: Yukos Oil Company's majority shareholders were represented in the**

*arbitral proceedings by Emmanuel Gaillard and Yas Banifatemi, as well as Jennifer Younan, also of Shearman & Sterling LLP.*

All Content © 2003-2014, Portfolio Media, Inc.